## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY CERBONE, et al.,

*Plaintiffs,*

v.

ALLIED VAN LINES, INC., et al.,

*Defendants.*

CIVIL ACTION
NO. 20-6276

**PAPPERT, J.**                                                                  **April 12, 2021**

### MEMORANDUM

Anthony Cerbone and his wife Carmella sued Allied Van Lines, Inc., SIRVA, Inc., Simonik Moving & Storage, Inc. and Simonik Transportation & Warehousing, LLC after Anthony was injured while helping load his motorcycle onto a mover's truck. They also seek compensation for damage to other property incurred during their move from Pennsylvania to Florida. Defendants move to partially dismiss the Amended Complaint. The Court grants the Motion in part and denies it in part for the reasons that follow.

I

A

The Cerbones moved from Pennsylvania to Florida in 2019. (Am. Compl. ¶¶ 1–2, 23, 35.) Before doing so, they contacted Allied about its moving and storage services. (*Id.* at ¶ 16.) Allied provided them several names of certified contractors, and Anthony ultimately contracted with one of them, Simonik Moving. (*Id.* at ¶¶ 17, 20.) The Cerbones believe Simonik Moving contracted separately with Simonik Transportation to "actually perform" the move. (*Id.* at ¶ 21.)

1

Anthony's motorcycle was among the items to going to Florida.  (*Id.* at ¶ 18.) The Cerbones made Simonik Moving aware the motorcycle "must be included" in their move "[i]n the months and weeks leading up to" it, including by listing it in their contract as part of the inventory to be moved.  (*Id.* at ¶¶ 18, 20); (Am. Compl. Ex. A 5, ECF 7-3.)

The Simonik Transportation movers came to the Cerbones on September 9, 2019 to load the Cerbones' belongings in a moving truck.  The moving crew foreman saw that Anthony's motorcycle "was in excellent condition" and "did not note any pre-existing marks or scratches."  (Am. Compl. ¶¶ 22–24.)  But on three occasions he "refused to receive [it] for transport and delivery," explaining it was too heavy to push into the moving truck.  *See* (*id.* at ¶¶ 25–27).  Each time, he suggested that Anthony drive the motorcycle up a ramp placed by the movers to get it into the truck himself.  (*Id.*) Anthony rejected this idea twice, but eventually agreed to do so after all other items had been loaded onto the truck.  (*Id.*)

Movers "directed" Anthony to drive the motorcycle up the ramp, which they placed leading into the truck's right corner.  (*Id.* at ¶ 28.)  He drove approximately halfway up the ramp and then realized the motorcycle's right handlebar was not going to clear the truck's right side.  (*Id.* at ¶ 29.)  While on the ramp, he applied the brakes and tried putting his feet down, but the ramp's width and orientation left no space for him to ground his right foot.  (*Id.*)  He fell approximately five feet off the ramp and the motorcycle landed on top of him, causing him "serious and permanent personal injuries," and "significantly damag[ing]" the motorcycle.  (*Id.* at ¶¶ 30–31.)

2

Anthony was taken to the hospital and movers loaded the motorcycle onto the truck themselves, transported the Cerbones' belongings to storage and delivered them in Florida on December 16, 2019.  (*Id.* at ¶¶ 33, 35.)[1]  Some items were "delivered with substantial damage caused by storage and delivery" and the Cerbones submitted a Statement of Claim for those damages.  (*Id.* at ¶ 39.)  The Statement excluded a claim for damage to the motorcycle.  *See* (*id.* at ¶¶ 37, 40); *see generally* (Am. Compl. Ex. B, ECF 7-4).  The movers noted in a Motorcycle Condition Report that the motorcycle was damaged "before loading."  (Am. Compl. ¶ 32); *see also* (Mot. to Dismiss Ex B, ECF 9-3). The Cerbones believe they did this "so that Simonik would not be responsible for the damage to the motorcycle because the damage happened before Simonik took possession and control of the motorcycle."  (Am. Compl. ¶ 32).  The Cerbones excluded the motorcycle from their Statement of Claim to show it was damaged before the movers "received [it] for loading, transportation and delivery."  (*Id.* at ¶ 40.)

Carmella executed on Allied letterhead a Bill of Lading dated September 4, 2019 listing Allied next to the word "Corporate" and Simonik Moving next to the words "Booking" and "Origin" under the heading "Carrier/Agent Contacts."  *See* (Am. Compl. Ex. A 11).

## B

The Cerbones filed an Amended Complaint on January 8, 2021 asserting negligence against SIRVA (Count II), Allied (Count III), Simonik Moving (Count IV) and Simonik Transportation (V) as well as loss of consortium (Count VI) and negligent infliction of emotional distress (Count VII) against all Defendants for injuries related to

---

[1]    The Amended Complaint does not say what entity made the final delivery.

the motorcycle accident. *See* (Am. Compl. ¶¶ 59–105). The Amended Complaint also brings Carmack Amendment claims against SIRVA (Count I) and Allied, Simonik Moving and Simonik Transportation (Count VIII) for damages to other property during the move. *See* (*id.* at ¶¶ 47–58, 106–113).

Defendants move to dismiss Counts II-VII entirely and Count VIII in part. They argue Counts II-VII are preempted by the Carmack Amendment. *See generally* (Mot. to Dismiss 17–22, ECF 9-2). They further contend Simonik Moving and Simonik Transportation must be dismissed from Count VIII because they acted as Allied's agents and that agents for a disclosed principal cannot be held liable for Carmack claims. *See generally* (*id.* at 22–25).

## II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a complaint includes well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)

(quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

While "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" in deciding a motion to dismiss, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993),  "an exception to the general rule is that a 'document *integral to or explicitly relied upon* in the complaint' may be considered 'without converting the motion into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (citation omitted).  "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.*

District Courts in the Third Circuit "may grant a Rule 12(b)(6) motion on the basis of an affirmative defense '*if* the predicate establishing the defense is apparent *from the face of the complaint*.'" *Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (emphasis in original)); *cf. Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir. 2003) ("[W]ith some exceptions, affirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under Rule 12(b)" because "[t]he facts

5

necessary to establish an affirmative defense must generally come from matters outside

of the complaint.").  "Whether a particular ground for opposing a claim may be the basis

for dismissal for failure to state a claim depends on whether the allegations in the

complaint suffice to establish that ground, not on the nature of the ground in the

abstract."  *Jones v. Bock*, 549 U.S. 199, 215 (2007).  A defendant bears the burdens of

production and persuasion for affirmative defenses.  *See Moore v. Kulicke & Soffa

Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003).  "Under Federal Rule of Civil Procedure

8, a complaint need not anticipate or overcome affirmative defenses; thus, a complaint

does not fail to state a claim simply because it omits facts that would defeat" an

affirmative defense.  *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014).

III

A

The Carmack Amendment limits interstate carrier liability for damage to or loss

of goods:

> A carrier providing transportation or service . . . shall issue a receipt or bill of
> lading for property it receives for transportation . . . . That carrier and any other
> carrier that delivers the property and is providing transportation or service . . .
> are liable to the person entitled to recover under the receipt or bill of
> lading . . . . *for the actual loss or injury to the property* caused by (A) the receiving
> carrier, (B) the delivering carrier, or (C) another carrier over whose line or route
> the property is transported in the United States . . . .

49 U.S.C. § 14706(a)(1) (emphasis added).

Carmack "embrace[s] 'all losses resulting from any failure to discharge a

carrier's duty as to any part of the agreed transportation'" and has "exceedingly broad"

preemptive force.  *Certain Underwriters at Interest at Lloyd's of London v. United

Parcel Serv. of Am., Inc.*, 762 F.3d 332, 335 (3d Cir. 2014) (quoting *Georgia, Florida &

6

*Alabama Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916)).  "It has uniformly been held that state law causes of action involving losses of or damages caused by the interstate shipment of household goods by common carriers under a bill of lading, whether contract based or tort based claims, are preempted by the Carmack Amendment."  *Strike v. Atlas Van Lines*, 102 F. Supp. 2d 599, 600 (M.D. Pa. 2000); *see also Certain Underwriters*, 762 F.3d at 336 ("State laws are preempted regardless of whether they contradict or supplement Carmack relief.").

Courts of Appeals nonetheless "have identified a peripheral set of state and common law causes of action that are not preempted by the Carmack Amendment," including claims based on conduct or harms "apart from the delay, loss, or damage to shipped property."  *Certain Underwriters*, 762 F.3d at 336 n.4 (citing *White v. Mayflower Transit, LLC*, 543 F.3d 581, 585–86 (9th Cir. 2008); *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997)); *see also Smith v. United Parcel Serv.*, 296 F.3d 1244, 1249 (11th Cir. 2002) ("claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption"); *Morris v. Covan World Wide Moving*, 144 F.3d 377, 382 (5th Cir. 1998) ("[T]he Carmack Amendment preempts any common law remedy that increases the carrier's liability beyond 'the actual loss or injury to the property,' . . . unless the shipper alleges injuries separate and apart from those resulting directly from the loss of shipped property.").

Courts are split on whether they follow a distinct conduct or distinct harm theory to analyze Carmack preemption.  *See Krauss v. IRIS USA, Inc.*, No. 17-778, 2017 WL 5624951, at *5 (E.D. Pa. Nov. 22, 2017).  The Third Circuit has not stated its preferred approach, but numerous courts in the Circuit have applied the conduct

theory. *See, e.g., id.* at *6–7; *Mallory v. Allied Van Lines, Inc.*, No. 02-cv-7800, 2003 WL 22391296, at *4 (E.D. Pa. Oct. 20, 2003); *Strike*, 102 F. Supp. 2d at 601.

Defendants argue they are each governed by Carmack because they are "carriers" involved in the "transportation" of goods as those terms are defined in the statute. (Mot. to Dismiss 16.) They contend Carmack preempts Counts II-VII because the facts surrounding the motorcycle accident and supporting those claims "relate exactly to the Defendant-carriers' conduct in providing 'transportation' . . . to Plaintiffs." (*Id.* at 17.) The Cerbones' allegations demonstrate the motorcycle "was always an integral part of Defendants' contracted-for transportation of [Plaintiffs'] household goods to Florida" and Plaintiffs say the accident occurred "during the loading process." (Mot. to Dismiss 19, 21); *see also* (Am. Compl. Ex. B 4). "Defendants were 'arranging for' 'delivery, elevation, . . . handling [and] packing' of the motorcycle when the accident occurred." (Mot. to Dismiss 21); *see also* (Reply 3 ("The only issue at the time of the incident was *how* the motorcycle would be loaded: not whether it would be loaded, whether Defendants were in control of how it would be loaded, or whether it would be part of the household goods delivered to Florida.") (emphasis in original)).

Indeed, in their Amended Complaint, the Cerbones claim their damages from the accident resulted from Simonik Transportation movers negligently performing their jobs, such as by carelessly controlling the ramp and directing Mr. Cerbone to drive the motorcycle up it. *See* (Mot. to Dismiss 18, 21); (Am. Compl. ¶¶ 28–30). Every count of negligence in the Amended Complaint assigns liability to Defendants for conduct relating to placing the ramp and loading the motorcycle onto the truck. *See* (Mot. to Dismiss 20–21); (Am. Compl. ¶¶ 61, 69, 82, 94).

The Cerbones contend Carmack does not govern or preempt Counts II-VII because Defendants refused to accept the motorcycle for carriage, and the motorcycle was not within Defendants' control, when the accident occurred.  (Resp. to Mot. to Dismiss 2, 7, 13, ECF 10.)  They emphasize the Motorcycle Condition Report documents the motorcycle's damages as existing "before loading" and say their Bill of Lading includes only an already damaged motorcycle.  (*Id.* at 5–6, 13, 15.)  They argue even if Carmack does apply, the conduct leading to the accident is entirely distinct from the conduct that caused damages to Plaintiffs' household goods.  (*Id.* at 11.)

i

Before evaluating whether the Carmack Amendment preempts Counts II-VII, the Court must determine whether the statute applies to the Defendants, all of whom define themselves as "carriers."   Accepting the Cerbones' allegations as true, however, the Court can only define Simonik Transportation as a carrier.

Under the Carmack Amendment, a carrier is "a motor carrier, a water carrier, and a freight forwarder."  49 U.S.C. § 13102(3).  A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation."  *Id.* at § 13102(14).  "Transportation" includes "services relating to [the movement of property], including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking."  *Id.* at § 13102(23)(B).  "Thus, the definition of 'carrier' encompasses entities that perform services other than physical transportation."  *TRYG Ins. v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284, 286 (3d Cir. 2019).

A carrier is distinct from other actors, such as brokers, in a shipping transaction. A "broker" is defined as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.  49 U.S.C. § 13102(2).  Although Carmack precludes many claims against carriers, it does not preempt claims against brokers.  *See, e.g., Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1300 (11th Cir. 2018); *5K Logistics, Inc. v. Daily Express, Inc.*, 659 F.3d 331, 338 (4th Cir. 2011); *Traction Tire, LLC v. Total Quality Logistics, LLC*, No. 19-5150, 2020 WL 6044179, at *5–6 (E.D. Pa. Oct. 13, 2020).

Whether a particular entity is a carrier, rather than a broker or other actor, is a fact-specific question dependent on the entity's actions during the "specific transaction" at issue, "which includes 'the understanding among the parties involved [and] consideration of how the entity held itself out.'"  *Luis M. Marson Jr., Inc. v. Alliance Shippers, Inc.*, 438 F. Supp. 3d 326, 331 (E.D. Pa. 2020) (quoting *Richwell Grp., Inc. v. Seneca Logistics Grp., LLC*, 425 F. Supp. 3d 57, 61 (D. Mass. 2019)); *see also id.* ("[W]hether a company is a . . . carrier is not determined by what the company labels itself, but  . . . its relationship to the shipper.") (internal quotations and citation omitted).[2]  Neither the licenses an entity holds nor its label in a contract are

---

[2]      Courts evaluating whether an entity acted as a broker or carrier in a particular transaction have contemplated the inquiry is sufficiently fact-intensive that in some cases it may even be inappropriate to determine at summary judgment.  *See, e.g., Essex*, 885 F.3d at 1302; *Ciotola v. Star Transp. & Trucking, LLC*, 481 F. Supp. 3d 375, 392 (M.D. Pa. 2020); *Alliance Shippers*, 438 F. Supp. 3d at 332.

dispositive.  *See id.* at 332.  In a nonprecedential opinion, the Third Circuit Court of

Appeals explained:

> [I]n determining whether a party is a carrier or a broker, the crucial question is
> whether the party has legally bound itself to transport goods by accepting
> responsibility for ensuring the delivery of the goods.  If an entity accepts
> responsibility for ensuring the delivery of goods, then that entity qualifies as a
> carrier regardless of whether it conducted the physical transportation.
> Conversely, if an entity merely agrees to locate and hire a third party to
> transport the goods, then it is acting as a broker. . . . In sum, if a party has
> accepted responsibility for transporting a shipment, it is a carrier.

*TRYG Ins.*, 767 F. App'x at 286–87 (footnote citations omitted).

1

With one exception, the Amended Complaint sheds little light on which

Defendants acted as carriers.  Simonik Transportation, the only entity alleged to have

participated in the physical movement of the Cerbones' property, fits the carrier

definition.  But the Amended Complaint is silent with respect to SIRVA's role.  And the

pleadings muddle the Cerbones' relationships with Allied and Simonik Moving enough

to preclude a determination at this stage as to whether one or both of those entities is a

carrier.

The Cerbones allege they entered a contract with Simonik Moving but also claim

Simonik Moving contracted with Simonik Transportation to "actually perform the

move."  (Am. Compl. ¶¶ 20–21.)  They do not allege they contracted with Allied and

primarily say Allied only provided referral services.  *See* (Am. Compl. ¶¶ 17, 69(b)).

Yet, in one paragraph of the Amended Complaint, they allege Allied breached its

"duties under the contract."  *See* (Am. Compl. ¶ 69).  Which entity allegedly accepted

responsibility for delivering the Cerbones' property to Florida is unclear.

The exhibits attached to the Amended Complaint further obfuscate the delineation between the roles Allied and Simonik Moving allegedly played and also fail to establish which entity accepted responsibility for the shipment or whether one entity merely agreed to engage a third party.  Exhibit A, which the Cerbones describe as their contract with Simonik Moving (Am. Compl. ¶ 20), in fact contains a series of documents with varying references to Allied, Simonik Moving or both, *see generally* (Am. Compl. Ex. A), some of which appear to be incomplete, *see, e.g.* (*id.* at 8–9) (providing pages fourteen and fifteen, but no preceding or subsequent pages, of bill of lading terms and conditions describing carrier responsibilities without identifying carrier).  Exhibit B, purportedly the Cerbones' Statement of Claim (Am. Compl. ¶ 39), appears on Allied letterhead, but Exhibit C, an email between Anthony and a Senior Claims Adjuster at SIRVA regarding the Statement of Claim, suggests Allied may have never actually handled it.[3]  *See generally* (Am. Compl. Ex. B); (Am. Compl. Ex. C).

In sum, only Simonik Transportation can be deemed a carrier at this point. Other Defendants may be carriers as well, but further fact development is necessary to make that determination.  Because the Court cannot yet conclude SIRVA, Allied or Simonik Moving are carriers, the Court assesses only whether Carmack preempts the claims against Simonik Transportation in Count V.  Defendants' Motion will be denied with respect to Counts II, III and IV as well as with respect to Counts VI and VII as they are alleged against SIRVA, Allied and Simonik Moving.

---

[3]    Exhibit C indicates the SIRVA Senior Claims Adjuster reviewed the Statement of Claim and provided a monetary settlement for certain damages to property resulting from the move.  *See* (Mot. to Dismiss Ex. C, ECF 7-5).  Absent any other facts regarding SIRVA's involvement in the move or any context surrounding the email, however, Exhibit C alone is insufficient to establish SIRVA acted or held itself out as a carrier.

ii

Notwithstanding the Cerbones' allegations that Simonik Transportation refused to "receive the motorcycle for transport and delivery," the Carmack Amendment preempts all claims against Simonik Transportation related to the accident with the motorcycle. The movers' actions and circumstances surrounding the accident fall squarely within the definition of "transportation" under Carmack, which again includes "services relating to [the movement of property], including *arranging for*, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking."  49 U.S.C. § 13102(23)(B) (emphasis added).

The Cerbones contend they told Simonik Moving the motorcycle "must be included" in their move "[i]n the months and weeks leading up to" it and provide a signed inventory list from May of 2019 that includes the motorcycle. These allegations show it was understood and agreed that the motorcycle was included among the property to be transported to Florida. The Cerbones also allege that while the movers refused to push the motorcycle into the truck themselves, the foreman repeatedly asked Anthony to do so, showing the motorcycle was part and parcel of everything being moved to Florida. And ultimately, the movers "directed" Anthony to drive his motorcycle into the truck using the ramp they had set up. Taken together, these allegations, paired with common sense, dictate that Simonik Transportation was, at the bare minimum, "arranging for" the motorcycle's "movement" at the time of the accident. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016) ("The

plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").[4]

The Cerbones claim that "[a]s a result" of Anthony having no room to place his right foot on the ramp set up by Simonik Transportation, he fell approximately five feet to the ground "and the motorcycle landed on top of him, causing serious and permanent personal injuries." (Am. Compl. ¶ 30.) "As a result of the motorcycle crushing Plaintiff and falling five feet from the ramp placed by Simonik, the motorcycle sustained significant damage." (*Id.* at ¶ 31.) Moreover, Carmella suffered injuries "[a]s a result" of her husband's involvement in the motorcycle accident. *See* (*id.* at ¶¶ 100, 105). The Cerbones' alleged injuries from the accident are inextricably intertwined with the damage to the motorcycle, one of the items of property being transported to Florida. The injuries forming the basis of the Cerbones' state law causes of action did not occur "apart from the delay, loss, or damage to shipped property," *see Certain Underwriters*, 762 F.3d at 336 n.4. Carmack preempts those state law claims under either a conduct or harm theory.

Defendants' Motion is granted with respect to Count V because Carmack precludes the Cerbones' negligence claim again Simonik Transportation. The allegations in Counts VI and VII against Simonik Transportation are also dismissed.

---

[4]     The Cerbones make much of the fact that the Motorcycle Condition Report documents damage to the motorcycle as having occurred before it was loaded on the moving truck, ostensibly to show that the motorcycle was not being transported at the time of the accident. *See, e.g.*, (Resp. to Mot. to Dismiss 4–6.) The movers' choice to document the motorcycle in this way, however, is not relevant to the legal question of whether Carmack applies. Carmack "transportation" is broadly defined to include "arranging for" the movement of property. 49 U.S.C. § 13102(23)(B). The Cerbones' allegations show this is what was happening at the time of the accident.

B

Courts "regularly . . . appl[y] agency principles to Carmack Amendment claims."
*Mallory v. Allied Van Lines, Inc.*, No. 02-cv-7800, 2004 WL 870697, at *2 (E.D. Pa. Apr.
7, 2004) (collecting cases).  Under the Restatement (Third) of Agency, an agent that
contracts for a disclosed principal becomes neither party to or liable for performance of
the contract unless the agent and third party contracting with the principal agree
otherwise.  *See* Restatement (Third) of Agency § 6.01.  Agents are, however, liable for
their tortious conduct that causes harm to a third party "[u]nless an applicable statute
provides otherwise" if they breach a duty they owed to the third party.  *Id.* at §§ 7.01–
.02.  Under the Carmack Amendment:

> Each motor carrier providing transportation of household goods shall be
> responsible for all acts or omissions of any of its agents which relate to the
> performance of household goods transportation services . . . and which are within
> the actual or apparent authority of the agent from the carrier or which are
> ratified by the carrier.

49 U.S.C. § 13907(a).  "Not only does the statutory language impose liability on a motor
carrier for the acts and omissions of the carrier's agent, but case law holds the agent of
a disclosed principal cannot be held liable pursuant to a duly issued bill of lading
contract."  *Werner v. Lawrence Transp. Sys., Inc.*, 42 F. Supp. 2d 567, 568–69 (E.D.N.C.
1998).

Defendants argue Count VIII must be dismissed as to Simonik Moving and
Simonik Transportation because they acted as Allied's agents.  (Mot. to Dismiss 22–23.)
Notwithstanding the Cerbones' contention that they contracted with Simonik Moving,
the Estimate and Order for Service and Bill of Lading attached to the Amended
Complaint show Allied was the corporate carrier with whom they contracted and

15

Simonik was its agent.  (*Id.*); *see also* (Am. Compl. Ex. A 1, 4, 11, 44).  The Cerbones do not respond to this argument.

Because the Court cannot identify which of SIRVA, Allied or Simonik Moving acted as a "carrier," it also cannot at this point determine which Defendants are properly named in Count VIII as carriers rather than carriers' agents.  The Amended Complaint appears to suggest Allied, Simonik Moving, and Simonik Transportation all acted as SIRVA's agents, *see* (Am. Compl. ¶¶ 49, 62), and that Simonik Moving and Simonik Transportation also acted as Allied's agents, *see* (*id.* at ¶ 70), and some of the documents attached to the Amended Complaint list Simonik Moving as an "origin agent," *see, e.g.*, (Am. Compl. Ex. A 4, 11).  But none of this resolves the currently ill-defined relationships among Defendants or between Defendants and the Cerbones with respect to their move.  This issue, too, can be resolved later in the case.  Defendants' Motion is denied with respect to Count VIII.

IV

A district court may properly deny leave to amend a complaint where further amendment would be futile.  *See Forman v. Davis*, 371 U.S. 178, 182 (1962).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).  A district court applies "the same standard of legal sufficiency that applies under Rule 12(b)(6)" to assess futility.  *Id.*

It would be futile for the Cerbones to amend their complaint again because they cannot assert state law claims against Simonik Transportation.  Carmack will always preempt those claims because both Anthony and Carmella's alleged injuries occurred

16

simultaneous to the alleged damage to the motorcycle in the course of its

transportation.

   An appropriate Order follows.

                                             BY THE COURT:


                                             */s/ Gerald J. Pappert*
                                             GERALD J. PAPPERT, J.